UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSLYN ROBINSON | : | CIVIL ACTION |
| Plaintiff | : | NO. 3:02 CV2120 (AWT) |
| | : | |
| V. | : | |
| | : | |
| HENDERSON, MARTINEZ,JOHNSON, | : | |
| MARQUIS AND CITYOF HARTFORD | : | |
| Defendants | : | JULY 15, 2004 |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

### PRELIMINARY STATEMENT

Pursuant to Rule 56 of the Federal and Local Rules of Civil Procedure, the defendants,

Detectives Alfred Henderson, Renaul Johnson and Anthony Martinez, Bruce Marquis and the

City of Hartford submit this memorandum of law in support of their motion for summary

judgment on the amended complaint dated September 10, 2003.  In further support of their

motion, they have submitted a Local Rule 56(a)1 statement of undisputed facts and an appendix

of exhibits.  For the reasons set forth below, the Court should grant the defendants' motion.

### BACKGROUND

### I.    STATEMENT OF THE FACTS

The plaintiff, Joslyn Robinson, has commenced this action against the City of Hartford,

Chief of Police Bruce Marquis and Hartford police detectives Alfred Henderson, Renaul Johnson

and Anthony Martinez seeking compensation for alleged civil rights violations arising from his

arrest on July 27, 2001.  (Amended Complaint, First Count).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

On July 27, 2001, at approximately 7:45 p.m., Detectives Henderson, Johnson and Martinez and State Trooper Perez were patrolling certain Hartford streets in an unmarked narcotics van as part of the Hartford Police Department and Connecticut State Police Narcotics Enforcement Initiative.  (**Exh. A,** Henderson Aff.;  **Exh. B,** Johnson Aff.**; Exh. C,** Martinez Aff.; and **Exh. D**, Perez Aff.).  At that same time, they were traveling north on Burton Street when Detective Johnson observed a man getting into a car with what he believed to be a gun.  (Id.)  This man has since been identified as the plaintiff, Joslyn Robinson. (Id.)

Once Detective Johnson advised his colleagues about what he had seen, they approached the plaintiff's vehicle in the van and positioned it in such a way that would allow them to exit the van, and, at the same time, prevent the plaintiff from leaving.  (Id.; **Exh. E**, Pl. Dep., p. 19).  The detectives and trooper then exited the van and approached the plaintiff with their badges out and visible and identified themselves as police officers.  (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs.).  Detective Henderson then proceeded to the driver's side of the vehicle, asked the plaintiff to exit the vehicle and explained that he was being stopped because the officers believed he had a gun.  (Id.)

The plaintiff, who claimed to be unaware that he was dealing with police officers at this time, initially refused to exit his vehicle and was hostile.  (**Exh. E**, Pl. Dep. Trans., p. 20).  Eventually, however, he exited his vehicle, and Detective Henderson attempted to search him.  (**Exh. A**, Henderson Aff.; **Exh. E**, Pl. Dep. Trans., pp. 20-21)  According to the plaintiff, he resisted these attempts by slapping Detective Henderson's hands away.  (**Exh. E**, Pl. Dep. Trans., p. 65).  According to the detectives and trooper, while the plaintiff was initially compliant, he

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

then attempted to flee when Detective Martinez attempted to search his vehicle.  (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs.).

As a result of the plaintiff's resistance, Detective Henderson was forced to subdue the plaintiff to the ground in order to handcuff him.  (**Exh. A**, Henderson Aff.; **Exh. E**, Pl. Dep., pp. 71-74).  According to the detectives, the plaintiff continued to struggle and resist Detective Henderson such that Detectives Martinez, Johnson and Trooper Perez had to assist in handcuffing him.  (**Exhs. A, B, C and D**).  According to the plaintiff, however, only Detective Henderson was physically involved in subduing and handcuffing him.  (**Exh. E**, Pl. Dep., p. 25).  Also according to the plaintiff, it was not until he was being handcuffed that he realized that Detective Henderson and the others were police officers.  (**Exh. E**, Pl. Dep., p. 26).

While on the ground, before and after being handcuffed, the plaintiff was shouting and creating a commotion such that a crowd was drawn to the scene.  (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs; **Exh. E**, Pl. Dep. Trans., pp. 54-55).  The crowd was cursing at the detectives and Trooper causing the situation to escalate.  (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs.).  Thus, in accordance with customary practice, the detectives and Trooper removed the plaintiff from the location on Burton Street to Keney Park in order to complete his arrest form.  (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs.; **Exh. E**, Pl. Dep. Trans., pp. 28-29).  The plaintiff remained hostile and continued to resist the detectives' efforts to search him while at Keney Park.  (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs.; **Exh. E**, Pl. Dep. Trans., pp. 20, 21, 30 & 34).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Thereafter, the detectives and trooper transported the plaintiff to the Hartford Police Department detention facility where he was officially charged with interfering with police and breach of peace. (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs; **Exh. E**, Pl. Dep. Trans., pp. 40-41; Amended Complaint, Second Count, ¶ 39). The detectives did not accompany the plaintiff inside, nor did they have anything to do with establishing the amount of his bail bond. (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs; **Exh. E**, Pl. Dep. Trans., pp. 40-41). Within hours, the plaintiff was released after posting $500.00 on a $5,000.00 bond. (Amended Complaint, First Count, ¶ 30). The charges were ultimately nolled. (Id., ¶ 33)

## II.    THE PLAINTIFF'S CLAIMS

The Amended Complaint contains four counts. The First Count, entitled "Negligence against Officer Henderson, Officer Martinez, and Officer Johnson," alleges that defendants Henderson, Martinez and Johnson "intentionally, or with deliberate indifference and callous disregard of plaintiff's rights, harassed, assaulted, battered, and deprived plaintiff of his right to equal protection of the laws and impeded the due course of justice, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983." (Id., ¶ 34) He further claims in this count that he was never informed of his rights. (Id., ¶ 28)

The Second Count, entitled "Officer Henderson, Officer Martinez and Officer Johnson (in their individual capacities): Civil Rights Violation Under Title 42 United States Code Section 1983 and 1988," incorporates the entire First Count by reference and alleges that "the defendants subjected the plaintiff to unreasonable and excessive force, false arrest, warrantless

- 4 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

arrest, arrest without probable cause, and unreasonable and excessive bail bond, all in violation

of the fourth, eighth and fourteenth amendments of the United States Constitution and Title 42

United States Code, Sections 1983 and 1988" and that "the defendants subjected the plaintiff to

unreasonable and excessive bail bond and the intentional infliction of emotional distress, in

violation of the laws of the State of Connecticut."  (Id., ¶¶ 45 & 46)

When asked to identify each and every act committed by the defendants which gives rise

to his claims that he was deprived of his Constitutional rights, the plaintiff stated "the physical

assault, detention, arrest, seizure, and search of plaintiff by defendants, without probable cause."

(**Exh. F**, Pl. Response to Def. Interrogatory No. 15).  Further, when asked to describe the manner

in which he claimed his arrest was unlawful, illegal, wrongful or malicious, the plaintiff stated

"the entire arrest, seizure and confinement, was without cause and with excessive force."  (**Exh.**

**F**, Pl. Response to Def. Interrogatory No. 16).

The Third Count is directed to the City of Hartford and incorporates by reference the

entirety of the First Count.  It then alleges that the "defendant, employees of the City of

Hartford" were acting within the scope of their employment at the time of the incident

complained of and that none of their acts were "willful or wanton."  (Amended Complaint, Third

Count, ¶ 36).[1]  The plaintiff then claims indemnity from the City of Hartford for the alleged

---

[1]      It is notable that in the First Count, the plaintiff alleges that the acts of the detectives were intentional while in the Third Count he alleges that they were not.  While this might be considered pleading in the alternative, it is problematic here in that the allegations of intentional conduct set forth in the First Count have been incorporated by reference into the Third Count. Thus, the Third Count alleges that the same conduct was both intentional and unintentional.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

carelessness and negligence of the defendant employees pursuant to Conn. Gen. Stat. § 7-465.
(<u>Id.</u>, ¶ 37)

The Fourth Count is directed to then Hartford Police Chief Bruce Marquis. It too incorporates by reference the entirety of the First Count. It then alleges that "[a]cting under color of law and pursuant to official policy or custom, defendant Bruce Marquis knowingly, recklessly, or with deliberate indifference and callous disregard of plaintiff's rights, failed to instruct, supervise and discipline" the defendant "officers" as regards their alleged conduct in this action. (<u>Id.</u>, ¶ 35) In response to the defendants' interrogatories, the plaintiff has attested that he is not using any other incidents of alleged police misconduct to support his case. (**<u>Exh. F</u>**, Pl. Response to Def. Interrogatory No. 12). The Fourth Count also makes a claim for Conn. Gen. Stat. § 7-465 indemnity. (Amended Complaint, Fourth Count, ¶ 40).

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). <u>See</u> <u>Szekeres v. Schaeffer</u>, 304 F. Supp. 2d 296, 304 (D. Conn. 2004). A genuine issue of fact only exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986). If the moving party carries his burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

trial." Fed. R. Civ. P. 56(e). Thus, to defeat a motion for summary judgment, the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to the material

facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." <u>Anderson</u>, 477 U.S. at 249-50.

## ARGUMENT

I.    **THE PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS UNDER THE FOURTH, FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED**

It is well established that Section 1983 does not create substantive rights, but merely

provides a remedy for violations of rights created elsewhere. <u>Baker v. McCollan</u>, 443 U.S. 137,

144, 99 S.Ct. 2689 (1979); <u>Chapman v. Houston Welfare Rights Organization</u>, 411 U.S. 600,

618, 99 S.Ct. 1905 (1979). The statute does not provide for substantive rights at all, <u>Huebschen

v. Department of Health and Social Services</u>, 716 F.2d 1167, 1170 (7th Cir. 1983); it merely

provides a method for vindicating federal rights conferred elsewhere. <u>Albright v. Oliver</u>, 510

U.S. 266, 114 S.Ct. 807, 811 (1994). Thus, to maintain an action under 42 U.S.C. § 1983, the

plaintiff must point to a cognizable federal right. <u>Ruggiero v. Krzeminski</u>, 928 F.2d 558, 562 (2d

Cir. 1991); <u>Ivimey v. Watertown</u>, 30 Conn. App. 742, 753, <u>cert.</u> <u>denied</u>, 226 Conn. 902 (1993).

For the reasons set forth below, those portions of the plaintiff's civil rights claims

alleging a cause of action under the Fourth, Fifth, Eighth, and Fourteenth Amendments fail to

state a claim upon which relief can be granted.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**HALLORAN
& SAGE LLP**

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

A.     **The Plaintiff Has Failed to State a Cause of Action Pursuant to the Fourth Amendment.**

1.     <u>The Plaintiff Has Failed To Establish A False Arrest Claim.</u>

In the Second Count of the Amended Complaint, the plaintiff specifically charges the detectives with, among other things, false arrest.  "A § 1983 claim for false arrest[s] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures."  <u>Weyant v. Okst</u>, 101 F. 3d 845, 852 (2d. Cir. 1996).  To establish a claim under § 1983 for false arrest, a plaintiff must prove that:  (1) the defendant intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not otherwise privileged.  <u>Singer v. Fulton County Sheriffs</u>, 63 F.3d 110, 118 (2d Cir. 1985); <u>Carson v. Lewis</u>, 35 F. Supp. 2d 250, 257 (E.D.N.Y. 1999).  It is well established, however, that there can be no federal civil rights claim for false arrest where the arresting officer had probable cause.  <u>Bernard v. United States</u>, 25 F.3d 98, 102 (2d Cir. 1994); <u>Doe v. Bridgeport Police Dep't.</u>, 198 F.R.D. 325, 335 (D. Conn. 2001); <u>Mistretta v. Prokesch</u>, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998).

Probable cause is a fluid concept -- turning on the assessment of probabilities in a particular factual context -- not readily, or even usefully, reduced to a neat set of legal rules.  <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983).  It exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  <u>Lee v. Sandberg</u>, 136 F.3d 94, 102-03 (2d. Cir. 1997); <u>Lennon v. Miller</u>, 66 F.3d 416, 424 (2d Cir 1995).  Probable

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  <u>Gates</u>, 462 U.S. at 243-44 n.13; <u>Cohen v. Dubuc</u>, 2000 WL 1838351, *4 (D. Conn. Nov. 28, 2000).  Moreover, the question is not what information might have been developed from further investigation, but whether the facts known when, and on which the police officer acted were sufficient to constitute probable cause.  <u>Warren v. Dwyer</u>, 906 F.2d 70, 73 (2d Cir. 1990).  A suspect's denial of criminal behavior does not require a police officer to forego arrest if the facts otherwise establish probable cause.  <u>Mistretta</u>, 5 F. Supp. 2d at 135.  Moreover, probable cause can exist even where it is based on mistaken information.  <u>Bulanov v. Meehan</u>, 2002 WL 181365, at *4 (S.D.N.Y. Feb. 6, 2002).  <u>See</u> <u>McKinney v. George</u>, 726 F.2d 1183, 1187 (7th Cir. 1984).  Once a police officer has probable cause, he need not explain away every theoretical possible claim of innocence before making an arrest.  <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997).

In this case, as a result of the events of July 27, 2001 involving the plaintiff and the defendant detectives, the plaintiff was arrested and charged with interfering with police and breach of peace.  Conn. Gen. Stat. § 53a-167a, entitled "Interfering with an officer: Class A misdemeanor," provides, in relevant part, that:

> "(a) [a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties."

It is undisputed that Detectives Henderson, Johnson and Martinez were performing their duties as members of the Hartford Police Department at the time of the incident giving rise to the plaintiff's Complaint.  (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs.).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In fact, the plaintiff has alleged as much.  (Amended Complaint, First Count, ¶ 9).  It is also undisputed that the plaintiff obstructed, resisted, hindered and/or endangered these detectives in the course of performing their duties.  See State v. Williams, 205 Conn. 456, 471 (1987)(Acts of resisting have been held to include both physical acts and verbal acts, provided that the verbal conduct is intended to interfere with a police officer.); In Re. Adalberto S., 27 Conn. App. 49, 55-56 (1992) ("Section 53a-167a is broad in scope … [and] in enacting Section 53a-167a, the legislature sought to prohibit behavior that hampers the activities of the police in the performance of their duties.").

The plaintiff has confirmed that he refused to exit his vehicle when the detectives asked him to do so; (**Exh. E**, Pl. Dep. Trans., p. 63); that he consistently slapped Detective Henderson's hands away from him while Henderson was attempting to pat him down and search him; (**Exh. E**, Pl. Dep. Trans., p. 65); that he would not remain still while he was being searched; (**Exh. E**, Pl. Dep. Trans., p. 34); that he argued with the detectives; (**Exh. E**, Pl. Dep. Trans., p. 58); that he consistently used profanities and obscene language in his dealings with the detectives; (**Exh. E**, Pl. Dep. Trans., pp. 20, 21 & 30); and that he encouraged others to become involved and thus caused a crowd of people to come upon the scene.  (**Exh. E**, Pl. Dep. Trans., pp. 54-55).  All of these facts, as averred by the plaintiff, amount to the requisite obstruction, resistance, hindrance and/or endangerment called for in Conn. Gen. Stat. § 53a-167a, and, thus,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

support the undeniable conclusion that the detectives had probable cause to arrest the plaintiff on these grounds.[2]

Likewise, the plaintiff was also charged with breach of peace pursuant to Conn. Gen. Stat. § 53a-181. This section provides, in relevant part, that :

> A person is guilty of breach of the peace in the second degree when, with the intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person:  (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or … (5) in a  public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do.

The plaintiff's own testimony confirms that he fought with the detectives, both physically and verbally, on Burton Street and in Keney Park, that he struck Detective Henderson, that he used abusive and obscene language on Burton Street and in Keney Park and that he caused a big and potentially hazardous crowd to gather as a result of his yelling.  (**Exh E**, Pl. Dep. Trans., pp. 20, 21, 30 & 34).  These acts, among others, led to his arrest under this statute.  There was probable cause for arresting this plaintiff.

---

[2]    The apparent dispute as to when the detectives identified themselves as police officers has no bearing on this conclusion for two reasons.  First, the detectives have averred under oath that the first thing they did upon approaching the plaintiff was to identify themselves as police officers.  (**Exhs. A, B, C & D**, Henderson, Johnson, Martinez and Perez Affs.).  As such, all of the events transpired, in their minds, with the plaintiff having knowledge as to who they were.  These were the facts known to the detectives upon which they acted.  <u>Warren v. Dwyer</u>, 906 F.2d at 73.  Second, and quite importantly, the plaintiff has confirmed that he knew the detectives were police officers at the time he was handcuffed.  He has also confirmed that he argued with the defendants and would not remain still to be searched AFTER being handcuffed.  (**Exh. E**, Pl. Dep. Trans., pp. 20, 21, 30 & 34).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Moreover, the court's probable cause analysis is not limited to the charges of interference and breach of the peace.  Even if the detectives were incorrect in the statutory provisions they relied upon to charge the plaintiff, their belief that they had probable cause to arrest the plaintiff was well-grounded under the circumstances.  See Wachtler v. County of Herkimer, 35 F.3d 77, 80 (2d Cir. 1984).  "Probable cause need only exist as to any defense that could be charged under the circumstances."  Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).  See Soltez v. City of Sandusky, 2001 WL 1130574, at **2-3 (N.D. Ohio Mar. 25, 2001), aff'd 2002 WL 31371980 (6th Cir. Oct. 15, 2002).  Thus, as long as the detectives had some reasonable basis to believe the plaintiff had committed a crime, the arrest was justified as being based on probable cause.  Barna, 42 F.3d at 819; Wachtler, 35 F.3d at 80.  For example, the plaintiff could have also been charged with disorderly conduct.  A person is guilty of disorderly conduct under Connecticut law:

> [w]hen, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct annoys or interferes with another person; or (3) makes unreasonable noise ….

Conn. Gen. Stat. § 53a-182.  See Zandhri v. Dortenzio, 228 F. Supp. 2d 167, 172 (D. Conn. 2002).  Disobeying a police officer's direct order constitutes disorderly conduct.  Szekeres v. Schaeffer, 2004 WL 722240, at *6 (D. Conn. Mar. 26, 2004).  Thus, because the detectives had probable cause to arrest the plaintiff, the entry of summary judgment is proper.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

2.    <u>The Plaintiff Has Failed To State A Claim For Wrongful Search or Seizure</u>.

A review of the plaintiff's Amended Complaint reveals that the plaintiff has not asserted a constitutional claim based upon an unreasonable search and seizure.  His interrogatory responses, however, challenge, among other things, the "detention," "seizure," and "search" as being conducted without probable cause.  (**Exh. E**, Pl. Response to Def. Interrogatory Nos. 15 & 16).  Any such claim lacks merit.

The detectives did not need probable cause to stop and search the plaintiff.  Rather, it is well settled that a police officer may stop, detain and question an individual if that officer has a <u>reasonable</u> <u>suspicion</u> that that individual is engaged in criminal activity.  <u>United States v. Delos-Rios, et al.</u>, 642 F.2d 42, 45 (2d. Cir. 1981).  "Reasonable suspicion," a necessarily lesser standard than "probable cause," derives from the need to achieve a "balance between the public interest and the individual's right to personal security."  <u>United States v. Arvizu</u>, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002) (citations omitted).  To determine whether reasonable suspicion existed at the time of a stop, "the circumstances surrounding the stop must be viewed as a whole, not as discrete and separate facts" and the circumstances "are to be viewed through the eyes of a reasonable and cautious police officer on the scene guided by his experience and training.'"  <u>Delos-Rios</u>, 642 F.2d at 45 (citations omitted).

In this case, it is undisputed that the detectives were patrolling the streets of Hartford as part of a narcotics enforcement initiative (**Exhs. A, B, C & D**, Henderson, Johnson, Martinez and Perez Affs).  The area they were in at the time was known for drug trafficking and violence.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(Id.)  While there, Detective Johnson observed the plaintiff with what he believed to be a gun.

(Id.)  He shared this information with the others in the van and the plaintiff was stopped for this

reason.  (Id.)  See also Bernard v. United States, 25 F.3d 98, 102-03 (2d. Cir. 1994)(Police

officers are entitled to rely on the allegations of fellow police officers in performing their duties).

The plaintiff, in fact, testified that during the course of events, the detectives advised him that

they were looking for a gun.  (Exh. E, Pl. Dep. Trans., p. 70).  The totality of these

circumstances, therefore, viewed through the eyes of a reasonable police officer rise to the level

of reasonable suspicion and justify the "detention", "seizure" and "search."  Delos-Rios, 642

F.2d 42.

> 3.     The Plaintiff Has Failed To State A Claim Of Excessive Force.

The United States Supreme Court has firmly established that the sole source of

constitutional protection for claims of unreasonable or excessive force employed by law

enforcement officers during an arrest, investigatory stop or other seizure is the Fourth

Amendment.  Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989); Tennessee v.

Garner, 471 U.S. 1, 7-22, 105 S. Ct. 1694, 1699-1707 (1985).  Of course, not every push and

shove, even if it may later seem unnecessary in the peace of a judge's chambers or a court room,

violates the Fourth Amendment so as to give rise to a claim of excessive force.  Graham, 490

U.S. 386 at 396.  Rather, the objective reasonableness of the officer's actions must be considered

in view of the fact that "police officers are often forced to make split-second judgments in

circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is

necessary in a particular situation."  (Id. at 397)  "The 'reasonableness' of a particular use of

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (Id. at 396)

In this case, the plaintiff alleges in his Amended Complaint that Detectives Henderson, Martinez and Johnson "tackled plaintiff to the ground, picked plaintiff up, punched plaintiff in his face, and then threw plaintiff to the ground a second time putting his knee in the plaintiff's back and head." (Amended Complaint, First Count, ¶ 17). He testified at his deposition, however, that it was only Detective Henderson who was physical with him,[3] that he was not punched in the face and that he was thrown to the ground only once. (**Exh. E**, Pl. Dep. Trans., pp. 25 & 73). He further testified that:

> He picked me up and slammed me on my back, dragged me away from the car, turned me over. When he turned me over, I was laying flat down, like I'm on top of the ground with my stomach touching the ground because I had no shirt on. Then he fell down on top of me with his knees in my back. And then he cuffed me, using his hand to push my head into the concrete.

(**Exh. E**, Pl. Dep. Trans., pp. 71-72).

At this point, according to plaintiff, Detective Henderson and the others all said they were looking for a gun. (Id., pp. 71-72).

The plaintiff went to the hospital the following day for injuries he claimed resulted from this incident. (**Exh. F**, Pl. Responses to Def. Interrogatories, No. 20). He had no broken bones, just contusions. (Id.; Amended Complaint, First Count, ¶ 26). He then waited until August 23, 2001, approximately one month later, to seek further treatment. (Id.) Although he claims that

---

[3]    The analysis regarding the plaintiff's excessive force claims, therefore, will focus only on Detective Henderson. It bears noting, however, that it applies equally to the other detectives to the extent the plaintiff is attempting to establish liability against them on this ground.

- 15 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**HALLORAN**
**& SAGE LLP**

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

his back hurts from time to time, he is not claiming any permanent injury related to this incident. (**Exh. E**, Pl. Dep. Trans,, pp. 51-52; Amended Complaint; **Exh. F**, Pl. Responses to Def. Interrogatories, No. 20).

In analyzing the reasonableness of Detective Henderson's conduct, it is important to examine the undisputed facts known to him at the time.  He was involved in a narcotics enforcement initiative wherein he and his colleagues were patrolling areas of Hartford known for drug trafficking and violence.  (**Exhs. A, B, C and D**, Henderson, Johnson, Martinez and Perez Affs.).  When Detective Johnson first observed the plaintiff, he thought the plaintiff had a gun. (Id.)  Detective Johnson shared this observation with Detective Henderson and the others in the van and this is what prompted the stop.  (Id.)  Though their specific recollections differ somewhat regarding the events that followed (i.e., plaintiff recalls that he was consistently hostile and Henderson recalls that plaintiff was initially cooperative and then resistant), both the plaintiff and Henderson agree that at some point the plaintiff resisted Henderson's efforts to search him.  (**Exh. E,** Pl. Dep. Trans., pp. 21-23; **Exh. G**, Henderson Dep. Trans., pp. 28-29).

While the plaintiff may have believed that he was lawfully resisting Henderson's efforts, his hindrance in this regard only served to heighten Henderson's concern that the plaintiff was concealing his criminal conduct (a gun) which posed the risk of extreme harm to him, his colleagues and anyone else in the area.  These facts viewed under the totality of the circumstances would lead a reasonable officer to conclude that there was probable cause to arrest the plaintiff for interfering with a police officer.  Thereafter, Henderson was entitled to use reasonable force to detain and take the plaintiff into custody.  The plaintiff's claims regarding the

- 16 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

use of force in subduing him to the ground must be dismissed, as it was objectively reasonable for Henderson to use a reasonable amount of force to turn and secure the plaintiff so as to handcuff him.

In Lennon v. Miller, 66 F.3d 416, 426 (2d. Cir. 1995), the plaintiff alleged that the defendant police officer used excessive force when the officer put his arm around her neck, shoulder, right arm and right hand and forcibly removed her from her vehicle. Lennon involved a domestic dispute between a legally separated couple over the ownership of a certain vehicle. At the time of the incident, the officers asked the plaintiff to exit the vehicle, but she refused. When the husband authorized the police to break the window, the plaintiff unlocked the door, but refused to exit. One of the officers opened the door and informed the plaintiff she was under arrest for obstructing governmental administration. He then "placed his arm around her neck, shoulder, right arm, and right hand, and forcibly removed her from the car." Lennon, 66 F.3d at 419.

In granting the defendant's Motion for Summary Judgment, the court concluded that it was objectively reasonable for the officer to believe that the force he used in removing the plaintiff from the vehicle did not infringe on her Fourth Amendment rights. Id. The court reasoned that no jury "could find that it was objectively unreasonable for the officers to believe that the force used to remove [the plaintiff] from the car was not excessive." (Id.)

The plaintiff makes a similar allegation in this case. He testified that he initially refused Henderson's commands to exit his vehicle and that he thereafter resisted his efforts at searching him. (Exh. E, Pl. Dep. Trans., pp. 20, 21, 30 & 34). In response to this resistance, Henderson

- 17 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

subdued and secured the plaintiff in order to place handcuffs on his wrists.  While the plaintiff

claims that that Henderson "tackled" him to the ground, he fails to quantify a level of force

which could be construed as unconstitutionally excessive.  In view of the facts and circumstances

presented to Henderson, no jury could reasonably find that it was objectively unreasonable for

him to believe that the force used violated the plaintiff's constitutional rights.  Henderson

believed the plaintiff had a gun and the plaintiff was resisting his attempts to search for it.  The

force employed was necessary to subdue the plaintiff while at the same time ensure that

Henderson, his colleagues and any others in the area remained safe from the dangers of the gun

that the plaintiff may have been concealing. It cannot, therefore, be reasonably argued that the

force at issue infringed on the plaintiff's rights or that any reasonable police officer would

understand that the force used was unconstitutionally excessive.  Graham, 490 U.S. at 396.

Accordingly, the defendants are entitled to judgment as a matter of law.

### B.  The Plaintiff Has Failed To State a Claim Under the Fifth Amendment.

The plaintiff's claims in this lawsuit are directed to a state municipality and municipal

employees.  It is well settled that Fifth Amendment due process and equal protection claims

"appl[y] only to the federal government and not the state."  Flowers v. Webb, 575 F. Supp. 1450,

1456 (1983).  Thus, allegations of federal action are required to state a claim thereunder.  (Id.)

Here, the plaintiff alleges no "federal action" and therefore, the Fifth Amendment does

not apply.  (Id.)  His claims in this regard should therefore be dismissed.

Hɑᴌᴌᴏʀᴀɴ
& Sᴀɢᴇ ʟʟᴘ

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### C.     The Plaintiff Has Failed To State a Claim Under The Eighth Amendment.

"The Eighth Amendment is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions …"  Whitley v. Albers, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088 (1986).  "An examination of the history of the [Eighth] Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes."  Ingraham v. Wright, 430, U.S. 651, 663, 97 S.Ct. 1401 (1977).  The primary purpose of this amendment is directed "at the method or kind of punishment imposed or the violation of criminal statutes[.]"  Id. at 667.  The Eighth Amendment does not even apply to pretrial detainees.  Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).

The plaintiff does not allege, nor can he, that the conduct about which he complains was inflicted upon him as a person convicted of a criminal offense.  In fact, he specifically alleges that the charges against him were nolled.  (Amended Complaint, First Count, ¶ 33).

The plaintiff does, however, allege that he was held in lieu of a Five Thousand Dollar ($5000.00) bond, which he claims was excessive and unreasonable. (Id., Second Count, ¶¶ 30 & 45).  It appears, therefore, that he is claiming that the defendants' alleged actions in setting the bond violated his right to be free from excessive bail as secured by the Eighth Amendment.[4]  The first and most obvious problem with this allegation is that it is undisputed that none of the detectives whom the plaintiff has sued had anything to do with setting the amount of the plaintiff's bond.  (**Exhs. B, C & D**, Henderson, Martinez and Johnson Affs.).  In fact, the

_____

[4]     The Eighth Amendment provides "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

plaintiff testified that the detectives did not accompany him into the Jennings Road detention facility where his bail was set. (**Exh. E**, Pl. Dep. Trans., pp. 40-41). Thus, because the detectives had nothing to do with setting the amount of the bond, they cannot be charged with an Eighth Amendment violation.

Second, and notwithstanding the detectives' lack of involvement in setting the amount of the bond, the bond itself was not excessive. Our Supreme Court has held that bail is unconstitutionally excessive when it is set at an amount higher than reasonably calculated to ensure the defendant's presence at trial. United States v. Salerno, 481 U.S. 39, 107 S.Ct. 2095, 2104 (1987). Merely because a defendant is financially unable to raise the bail imposed, however, does not mean it is excessive under the Eighth Amendment. United States v. McConnell, 842 F.2d 105, 107 (2d Cir. 1988). In the present action, the plaintiff alleges that the amount of bail was excessive, although he does not claim that he was unable to post bail. Quite the contrary, he specifically alleges that he was "released after paying $500.00 on a $5,000.00 bond." (Amended Complaint, First, Count, ¶ 30). Thus, the plaintiff fails to state a claim under the Eighth Amendment.

      **D.**      **The Plaintiff Has Failed To State a Claim Under the Fourteenth Amendment.**

          1.     The Plaintiff Has Failed to Establish a Violation of the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment commands that "all persons similarly situated … be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

439 (1985).  See Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004); Harlen Assocs. v. The

Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).  An equal protection claim

may be brought by a "class of one" where the plaintiff proves that he has been treated differently

from others similarly situated and that there is no rational basis for the difference in treatment.

Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000) (per curiam).  Before Olech, the

Second Circuit permitted selective treatment claims based on a "class of one" if the plaintiff

proved both:  (1) that he was treated differently from other similarly situated individuals; and (2)

that such differential treatment was based on impermissible considerations such as race, religion,

intent to injure or punish the exercise of constitutional rights, or malicious or bad faith intent to

injure a person.  Harlen, 273 F.3d at 499; LaTrieste Rest. & Cabaret v. Village of Portchester, 40

F.3d 587, 590 (2d Cir. 1994).  See Cobb, 363 F.3d at 110 (describing elements of a selective

prosecution claim).

  In Harlen, the Second Circuit assumed without holding that plaintiffs who establish

differential treatment could state an equal protection claim by showing "either that there was no

rational basis for the unequal treatment received, or that the unequal treatment was motivated by

animus."  273 F.3d at 500.  See Giordano, 274 F.3d at 750-51.  If a plaintiff receives similar

treatment as that afforded to similarly situated individuals, he has no claim for equal protection.

Tuchman v. State of Conn., 185 F.Supp. 2d 169, 173 (D. Conn. 2002).  See Giordano, 274 F.3d

at 751.  Moreover, if no other similarly situated individuals exist, then the plaintiff has no claim

for equal protection.  (Id.)  In the instant case, the plaintiff cannot maintain a "class of one"

claim.  A review of the Amended Complaint reveals that he has not properly alleged the essential

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

elements of such a claim.  More importantly, he has no evidence of either differential treatment as compared to those similarly situated or assuming the existence of differential treatment, that such treatment was based on a malicious or bad faith intent to injure him.[5]

Here, the plaintiff's case is based on no more than bare allegations and conclusory statements unsupported by evidence.  Thus, summary judgment is appropriate.  See Presnick v. Town of Orange, 152 F. Supp. 2d 215, 225 (D. Conn. 2001).

> 2.    The Fourteenth Amendment Is Improperly Invoked in Other Circumstances.

The plaintiff also attempts to invoke the protections of the Fourteenth Amendment with regard to his claims of excessive force, false arrest, warrantless arrest, arrest without probable cause, and unreasonable and excessive bail bond.  (Amended Complaint, Second Count, ¶ 45). As established above, these claims, though unsupported and invalid under any scenario, are more properly addressed under the Fourth and Eighth Amendments.  Accordingly, the plaintiff's claims alleging a violation of his rights under the Fourteenth Amendment as regards his arrest and bail bond should be dismissed.

---

[5]    In Olech, the plaintiff alleged that the defendant Village intentionally demanded a 33-foot easement as a condition to connecting her property to the municipal water supply, while a 15-foot easement was demanded from similarly situated property owners.  528 U.S. at 565.  The Court did not address the theory of subjective ill will or malice relied upon by the Seventh Circuit below.  (Id. at 563-65)  To date, the Second Circuit has declined to address whether Olech has removed the requirement of malice.  Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001); Harlen, 273 F.3d at 499-500.  If the court concludes that it is necessary to address this issue, it should require the plaintiff to prove vindictiveness or malice as part of an Equal Protection Clause claim.  The proof of this additional element has been adopted by the Fifth and Seventh Circuits.  Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000); Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2001).  It was also advocated by Justice Breyer in his concurring opinion in Olech.  528 U.S. at 565-66 (Breyer, J., concurring).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**E.      The Plaintiff Has Failed To Establish Constitutional Violations Based On An Alleged Failure To Give Miranda Warnings.**

A review of the Amended Complaint reveals that the plaintiff has included the statement that he "was never informed of his rights." (Amended Complaint, First Count, ¶ 28). Whether this sufficiently rises to the level of an express allegation of a constitutional violation based upon an alleged failure by the defendants to give him the warnings required under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) or whether it is simply considered a passing reference as part of the factual background, the plaintiff's claim is without merit.

Simply stated, a claim that an officer failed to comply with <u>Miranda</u> does not state a cause of action under § 1983. <u>Chavez v. Martinez</u>, 538 U.S. 760, 772 (2003); <u>Deshawn E. v. Safir</u>, 156 F.3d 340, 346 (2d Cir. 1998); <u>Bennett v. Passic</u>, 545 F.2d 1260, 1263 (10th Cir. 1976); <u>Hanrahan v. City of Norwich</u>, 959 F. Supp. 118, 123 (D. Conn. 1997). <u>See</u> <u>United States v. Patane</u>, 2004 WL 1431768, *5 (U.S. June 28, 2004)("The <u>Miranda</u> rule is not a code of police conduct, and police do not violate the Constitution (or even the <u>Miranda</u> rule, for that matter) by mere failures to warn."). Here, it is undisputed that the plaintiff was not compelled to testify at trial, thus his constitutional rights were not violated. Accordingly, the court should enter judgment in favor of the defendants on any claim based on an alleged failure to receive <u>Miranda</u> warnings.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## II.    THE PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS ARE BARRED BY QUALIFIED IMMUNITY

### A.    <u>General Principles</u>.

Under the qualified immunity doctrine, government officials performing discretionary

functions are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights that a reasonable person would have known.

<u>Mitchell v. Forsyth</u>, 472 U.S. 511, 524 (1985).  Qualified immunity strikes a balance between the

need to provide a means for the vindication of constitutional guarantees and the societal costs

that inhere in litigation against public officials, including "the danger that fear of being sued will

'dampen the ardor of all but the most resolute or the most irresponsible [public officials], in the

unflinching discharge of their duties.'"  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814 (1982).

A government official is entitled to qualified immunity in any of three circumstances:  (1)

if the conduct attributed to him is not prohibited by federal law; (2) where that conduct is so

prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not

"clearly established" at the time of the conduct; or (3) if the defendant's action was objectively

reasonable in light of the legal rules that were clearly established at the time it was taken.  <u>X-</u>

<u>Men Security Inc. v. Pataki</u>, 196 F.3d 56, 65-66 (2d Cir. 1999).  The qualified immunity analysis

is to be approached sequentially.  <u>Ehrlich v. Town of Glastonbury</u>, 348 F.3d 48, 54-57 (2d Cir.

2003).  Accordingly, the first step in the analysis is to determine whether the plaintiff has alleged

the deprivation of an actual constitutional right at all.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001);

<u>Conn. v. Gabbert</u>, 526 U.S. 286, 290 (1999).  If the plaintiff has alleged a violation against the

- 24 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

defendant at issue, the court proceeds to the second prong and if necessary, to the third prong of the analysis.  (See Id.)

Whether the law was "clearly established" is a pure question of law for the court to decide.  Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir. 1994).[6]  A right is only clearly established if (1) it is defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has affirmed its existence or (3) a reasonable defendant would understand from existing law that his acts were unlawful.  Mrosek v. Kraatz, 178 F. Supp. 2d 104, 107 (D. Conn. 2001).  Thus, for a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  Accordingly, an official's actions are immune unless in light of pre-existing law, the unlawfulness of the act is apparent.  (Id.)

An official's conduct is objectively reasonable where reasonable officials could disagree about whether the conduct was correct.  Carson, 35 F. Supp. 2d at 265.  When reasonable officials could disagree, qualified immunity protects an officer from suit.  (See Id.)

**B.**    **Qualified Immunity Applied.**

1.    The False Arrest Claim.

In the context of a false arrest claim, the Second Circuit has recognized that a police officer is entitled to qualified immunity from suit without probable cause if either (1) it is

---

[6]    As part of this analysis, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.  Wilson v. Layne, 526 U.S. 603, 615 (1999).  In determining whether the constitutional right at issue was clearly established, courts should define the right with a "high level of particularity."  See Edwards v. City of Goldsboro, 178 F.3d 231, 250-51 (4th Cir. 1999).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

objectively reasonable for the officer to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether the probable cause test was met. <u>Escalera v. Lunn</u>, 361 F.3d 737, 743 (2d Cir. 2004); <u>Robinson v. Via</u>, 821 F.2d 913, 921 (2d Cir. 1987); <u>Szekeres</u>, 2004 WL 722240, at *5. Thus, an officer sued for having made an arrest without probable cause is entitled to qualified immunity if there was "arguable" probable cause for the arrest, which is a more lenient standard than probable cause. <u>Escalera</u>, 361 F.3d at 743; <u>Knight v. Jacobson</u>, 300 F.3d 1272, 1274 (11th Cir. 2002); <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 162 (2d Cir. 2002). Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. <u>Lee</u>, 136 F.3d at 102; <u>Gold v. City of Miami</u>, 121 F.3d 1442, 1445 (11th Cir. 1997). Evidence before a court might be insufficient to sustain a finding of probable cause yet be adequate for the judge to conclude it was reasonable for the police officer to believe that he had a good basis for his actions. <u>Magnotti v. Kuntz</u>, 918 F.2d 364, 367-68 (2d Cir. 1990).

Thus, under the qualified immunity analysis, mistaken judgments concerning probable cause are protected so long as they are reasonable. <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987); <u>Bulanov</u>, 2002 WL 181365, at *5. Whether under the circumstances a reasonable officer could believe probable cause for an arrest existed, thus giving rise to qualified immunity, is a question of law. <u>Sharrar v. Felsing</u>, 128 F.3d 810, 827 (3d Cir. 1997).

As discussed above, there was probable cause to arrest the plaintiff for at least, breach of the peace, interference and disorderly conduct. At a minimum, even if the Court disagrees with

- 26 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the analysis set forth above, there was "arguable" probable cause to arrest the plaintiff.  Thus, the defendants are entitled to qualified immunity on the false arrest claim.

        2.       <u>The Search and Seizure Claim</u>.

As demonstrated above, the plaintiff did not have a constitutional right that protected him from being stopped, questioned and searched by the detectives due to their reasonable suspicion that something criminal was afoot.  <u>Delos-Rios</u>, 642 F.2d at 45.  As such, the plaintiff has failed to establish his claim and the defendants are entitled to qualified immunity.  Even if the Court were to conclude that the plaintiff was constitutionally protected from the acts above, no such right was clearly established under the relevant case law as of July 27, 2001.  Finally, even if such a right was clearly established on the date at issue, the conduct alleged by the plaintiff was objectively reasonable in that reasonable officers could disagree about the propriety of the search and seizure, particularly here where the stop was premised on information observed by only one of the detectives. Accordingly, the defendants are entitled to qualified immunity on the search and seizure claim.

        3.       <u>The Excessive Force Claim</u>.

The defense of qualified immunity applies to excessive force claims if "a reasonable officer would have believed that the use of force alleged was objectively reasonable in light of the circumstances."  <u>Lennon</u>, 66 F.3d 416 at 425.  As the analysis set forth above plainly demonstrates, the amount of force used was objectively reasonable under the circumstances here. Henderson believed the plaintiff had a gun and the plaintiff's lack of cooperation only served to heighten this suspicion and further his genuine concern for his own safety, as well as for the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

safety of his colleagues and others in the area.  As such, because the objective reasonableness

test is met, the defendants are entitled to qualified immunity on this claim.

4.    The Fifth and Eighth Amendment Claims.

Even if the Court were to determine that plaintiff did have a right to protection under the

Fifth and Eighth Amendments under the circumstances alleged, the defendants would be entitled

to qualified immunity because any such rights were not "clearly established" at the time of the

plaintiff's arrest and because the defendants' conduct under the circumstances was objectively

reasonable.

5.    The Equal Protection.

The defendants would also be entitled to qualified immunity on the equal protection

claim because their conduct under the circumstances was objectively reasonable.

6.    The Miranda Warnings Claim.

Even assuming for the sake of argument, that the Court were to hold that the plaintiff had

some constitutional right to receive Miranda warnings under the circumstances at issue, which as

demonstrated above, he did not, the defendants would be entitled to qualified immunity because

any such right was not "clearly established" at the time of the plaintiff's arrest and because the

defendants' conduct under the circumstances was objectively reasonable.  At a minimum,

reasonable officers could disagree whether Miranda warnings were required under the

circumstances at issue.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

III.    **THE PLAINTIFF'S STATE LAW (COMMON LAW, STATUTORY AND OTHERWISE) ARE WITHOUT MERIT**

A.    <u>**The Plaintiff Has Failed To Establish A Claim For Intentional Infliction Of Emotional Distress**</u>.

The plaintiff's Amended Complaint alleges, among other things, that the detectives "subjected the plaintiff to … the intentional infliction of emotional distress, in violation of the laws of the State of Connecticut." (Amended Complaint, Second Count, ¶ 46). Under Connecticut law, in order to establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the distress sustained by the plaintiff was severe. <u>Myers v. Bunker Ramo Corp.</u>, 1992 WL 88166 at *8 (D. Conn. Jan. 21, 1992) (Cabranes, J.), <u>aff'd</u> 979 F.2d 846 (2d Cir. 1992); <u>DeLaurentis v. City of New Haven</u>, 220 Conn. 225, 266-67 (1991); <u>Petyan v. Ellis</u>, 200 Conn. 243, 253 (1986). A defendant may be found liable for intentional infliction of emotional distress only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Myers</u>, 1992 WL 88166, at *8 (citation and internal quotations omitted). Mere insult, indignities, or annoyances will not suffice. <u>Wiggins v. Connecticut</u>, 2000 WL 436615, at *6 (D. Conn. Mar. 15, 2000). The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent. <u>Huff v. West Haven Bd. of Educ.</u>, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). Mere conclusory allegations are insufficient as a matter of law to

- 29 –

HALLORAN
& SAGE LLP

support a cause of action for intentional infliction of emotional distress.  (Id.)  Whether a defendant's conduct rises to the level of being "extreme and outrageous" is a question to be determined by the court in the first instance.  Myers, 1992 WL 88166, at *8.

In the instant case, the plaintiff's characterization of the detectives' conduct is irrelevant. As a matter of law and based upon the undisputed facts, the detectives' conduct was neither extreme nor outrageous.  To the contrary, as demonstrated above, their conduct under the undisputed circumstances was objectively reasonable.  The detectives stopped the plaintiff because they believed he had a gun.  His hostility and acts of resistance in dealing with them only served to strengthen this suspicion and their concern for their own safety as well as the safety of others.  Under these circumstances, it was objectively reasonable to take the plaintiff into custody and to use the force necessary to effectuate the arrest.  The plaintiff's inconsistent characterizations of the force used, notwithstanding any injuries allegedly suffered by him were *de minimus*.  Thus, the defendants are entitled to judgment as a matter of law.

Moreover, in the absence of any type of medical or mental health treatment, the mental distress alleged by the plaintiff cannot be considered of a "very serious kind."  DeLaurentis, 220 Conn. at 267.  See Reed v. Signode Corp., 652 F. Supp. 129, 137 (D. Conn. 1986); Almonte v. Coca-Cola Bottling Co. of New York, Inc., 959 F. Supp. 569, 575-76 (D. Conn. 1997).  While the plaintiff claims that he has suffered "extreme emotional distress," he has provided absolutely no evidence and/or further specificity to support this.  His claim, therefore, is nothing more than a bald legal conclusion that is insufficient to defeat summary judgment.  Indeed, his responses to the defendants' Interrogatories and Production Requests make no claim regarding emotional

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

distress or even arguable symptoms thereof.  (**Exh F,** Pl. Response to Def. Interrogatory No. 20).

Further, he offered no testimony at his deposition regarding emotional distress or symptoms

thereof.  (**Exh. E**, Pl. Dep. Trans., pp. 27, 51-52).  Finally, and quite significantly, the plaintiff

never sought medical treatment for emotional distress or arguable symptoms thereof.  (Id.)  See

also **Exh. F**, Pl. Response to Def. Interrogatory No. 20).  Reed, 652 F. Supp. at 137 (without

medical treatment for emotional distress, the plaintiff could not withstand summary judgment).

Absent severe emotional distress, the plaintiff's claim fails as a matter of law.

    **B.**    **<u>The Plaintiff Has Failed To Establish A Claim For Unreasonable and
Excessive Bail Bond</u>.**

    In addition to erroneously claiming that the alleged unreasonable and excessive bail bond

violated his federal Constitutional rights, the plaintiff claims that the laws of the State of

Connecticut were violated in this regard, as well.  (Amended Complaint, Second Count, ¶ 46).

The same analysis presented above with respect to the plaintiff's ill fated Eighth Amendment

claim applies here.  Indeed, the Connecticut Supreme Court has determined that the state

constitutional provision against excessive bail bond does not require a bail that the accused can

raise.  State v. Menillo, 159 Conn. 264, 269 (1970).

    Again, while claiming that his bail was excessive, the plaintiff also confirms that he was

able to post bond.  There simply is no violation of any of the unspecified "laws of Connecticut"

in this regard and the defendants are therefore entitled to summary judgment on this claim.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**C.    The Plaintiff Has Failed to Establish and Assault and Battery Claim.**

The plaintiff appears to allege that he was subjected to assault and battery at the hands of the defendants.  (Amended Complaint, First Count, ¶ 34). These apparent allegations are deficient.

Assault and battery are distinct torts.  See 1 Daniel C. Pope, Connecticut Actions and Remedies (1996)(hereinafter "Pope").  Pope, § 1:01 at 1-2.  A battery is an intentional, unprivileged, offensive bodily contact.  Id., § 1:02 at 1-3.  To be actionable as battery, the offensive conduct must not be privileged.  Id., § 1:08 at 1-9.  An assault is a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm.  Id., § 2:02 at 2-2.  By definition, an assault action cannot lie when the threatening gesture that caused the apprehension was justified or excused by some rule of law. Id., § 2:04 at 2-3.  Thus, the existence of a privilege to make the gesture or create apprehension or complete the offensive bodily contact will defeat the action.  Id

Where the defendant is authorized or obligated by law to make physical contact with the plaintiff, there is no tort.  Pope, § 1:14 at 1-18.  For example, if a police officer makes a lawful arrest of the plaintiff, the fact that an offensive physical contact was involved does not make the officer liable for battery.  Id.  See Conn. Gen. Stat. § 53a-22.  A citizen must submit to the authority of a police officer.  Pope, § 1:14 at 1-18.  See Conn. Gen. Stat. § 53a-23.  If a police officer uses reasonable force, the arrestee has no right to self-defense.  Pope, § 1:14 at 1-18. Thus, a police officer may use reasonable force to effectuate an arrest, and may only be liable for excessive force if the amount of force was in excess of that which the officer reasonably believed

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

to be necessary.  See Pope, § 1:14 at 1-18.  See also Butts v. Carey, 706 F. Supp. 158, 163 (D. Conn. 1988)[7]

In the instant case, to the extent the plaintiff has even properly alleged an assault and battery claim, it is simply inapplicable.  Moreover, with regard to both the assault and battery claims, the amount of force used by the defendants to take the plaintiff into custody was objectively reasonable as a matter of law.  Accord, Graham v. Conner, 490 U.S. 386, 396 (1989); Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir. 1990); Mroz v. City of Tonawanda, 999 F. Supp. 436, 464 (W.D.N.Y. 1998).  The defendants were in an area known for drug trafficking and they thought the plaintiff had a gun.  While searching for this gun, the plaintiff was hostile and resistant. Under these circumstances, it was reasonable and appropriate for the defendants to take the plaintiff into custody and to use the force necessary to accomplish the custodial arrest. See Mroz, 999 F. Supp. at 464-65; Owens v. Colburn, 860 F. Supp. 966, 972-73 (N.D.N.Y. 1994), aff'd 60 F.3d 812 (2d Cir. 1995).  Likewise, the absence of any significant physical injury (as discussed above) to the plaintiff confirms that the amount of force used was reasonable.  See Bond v. Queen, 71 F. Supp. 2d 1117, 1124-25 (D. Kan. 1999); Cooper v. City of Virginia Beach, 817 F. Supp. 1310, 1319 (E.D. Va. 1993), aff'd 21 F.3d 421 (4th Cir. 1994).  Accordingly, the entry of summary judgment with respect to any possible claim of assault and battery is appropriate.

---

[7]     Moreover, a claim for battery will also not lie if the defendant struck the plaintiff in self-defense.  Pope, § 1:10 at 1-13.  In fact, the right to use self-defense is statutory in Connecticut. Conn. Gen. Stat. §§ 53a-18, 19.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**D.**     **The Plaintiff Has Failed to Establish a False Arrest Claim.**

As discussed above in detail, the defendants had probable cause to arrest the plaintiff. Thus, like his federal Constitutional claim, the plaintiff's common law false arrest claim fails as a matter of law.  <u>Beinhorn</u>, 23 Conn. App. 487, 491-92 (1990).  (Amended Complaint, First and Second Counts).  Accordingly, the court should enter summary judgment in favor of the defendants.

**E.**     **Claims Directed to the City of Hartford, Pursuant to Conn. Gen. Stat. Sec. 7-465.**

By its very nature, Connecticut General Statutes Section 7-465 allows for a plaintiff to seek indemnity from a municipality based upon the <u>unintentional</u> actions of a municipal employee within the scope of his/her employment.  <u>See</u> fn.1.  As the plaintiff has been unable to establish liability as to the defendants Henderson, Johnson and Martinez, for the foregoing reasons, there is no basis to seek indemnity from the City of Hartford as set forth in the Third Count of the Amended Complaint.  Likewise, as will be discussed <u>infra</u>, the plaintiff has also been unable to establish liability as to defendant Marquis.  The only claims directed to the defendant, City of Hartford, are derivative and based upon Conn. Gen. Stat. Section 7-465. Judgment should thus enter in favor of the City of Hartford as to this claim as a result.

**IV.**    **THE PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY GOVERNMENTAL/QUALIFIED IMMUNITY**

The plaintiff's state statutory and common law claims against the defendants and the City are barred by governmental immunity.  The determination of whether governmental immunity

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

applies is a question of law.  <u>Gordon v. Bridgeport Housing Auth.</u>, 208 Conn. 161, 170 (1988).

In outlining the scope of governmental immunity, Connecticut courts have recognized that

municipalities and their employees or agents have immunity from negligence liability for

governmental acts involving the exercise of discretion or judgment.  <u>Elliott v. Waterbury</u>, 245

Conn. 385, 411 (1998).  Specifically, a municipal employee, such as a police officer, has a

qualified immunity in the performance of a governmental or discretionary act, as opposed to a

ministerial act.  <u>Id.</u>  The hallmark of a governmental or discretionary act is that it requires the

exercise of judgment.  <u>See</u> <u>Gordon</u>, 208 Conn. at 167-68.  On the other hand, ministerial acts are

performed in a prescribed manner without the exercise of judgment or discretion as to the

propriety of the action.  <u>Id.</u>  For example, the operation of a police department is a discretionary

governmental function, and acts or omissions in connection with police functions ordinarily do

not give rise to liability.  <u>See</u> <u>id.</u> at 180.  Connecticut courts have consistently held that acts and

omissions of police officers in the exercise of their duties are discretionary in nature.  <u>See, e.g.</u>,

<u>Davis-Trapani v. Scarcella</u>, 2003 WL 21805633, at *3 (Conn. Super. July 23, 2003), <u>aff'd</u> 83

Conn. App. 903 (2004).

      Here, it is undisputed that Henderson, Johnson and Martinez were carrying out their

duties as police officers.  As such, their acts were discretionary and they are entitled to

governmental immunity on the plaintiff's state law claims.

      Conn. Gen. Stat. § 52-557n(a)(2) provides as follows:

> Except as otherwise provided by law, a political subdivision of the state shall not
> be liable for damages to person or property caused by: (A) acts or omissions of
> any employee, officer or agent which constitute criminal conduct, fraud, actual

- 35 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> malice or willful misconduct; or (B) negligent acts or omissions which require the
> exercise of judgment or discretion as an official function of the authority
> expressly or impliedly granted by law.

The general rule under Connecticut law is that a municipality is immune from liability for
tortious acts unless the legislature has enacted a statute abrogating that immunity. <u>Pane v. City
of Danbury</u>, 267 Conn. 669, 677 (2004). For example, municipalities are immune from liability
for the tort of intentional infliction of emotional distress. <u>Id.</u> at 677, 684-85. (Under Connecticut
law, the term "willfulness" is synonymous with "intentional".) Moreover, under the general rule,
a municipality enjoys governmental immunity for common law negligence. <u>See</u> <u>Pane v. City of
Danbury</u>, 2002 WL 31466332, at *8 (Conn. Super. Oct. 18, 2002), <u>aff'd</u> 267 Conn. 669 (2004).[8]

Here, Hartford is entitled to governmental immunity on the state common law claims.
Moreover, Hartford is entitled to governmental immunity to the extent the plaintiff is alleging
malicious, willful or intentional acts by Henderson, Johnson and Martinez. It is also entitled to
immunity because the plaintiff has not identified a statute which abrogates municipal liability for
the claims he is asserting.

## V.    THE PLAINTIFF CANNOT ESTABLISH A CONSTITUTIONAL VIOLATION BY CHIEF MARQUIS

The plaintiff has directed claims to Hartford's then Chief of Police, Bruce Marquis, in the
Fourth Count of the Amended Complaint. Therein, the plaintiff alleges that Marquis deprived
the plaintiff of his "Constitutional and statutory rights guaranteed by the Fifth and Fourteenth

---

[8]    The First Count of the Amended Complaint is specifically entitled "Negligence against
Officer Henderson, Officer Martinez, and Officer Johnson," although the plaintiff never alleges
specific acts of negligence directed to any of the named individual defendants.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983."

(Amended Complaint, Fourth Count, ¶ 38).  As grounds for this allegation, the plaintiff alleges

that then Chief Marquis, "acting under color of law and pursuant to official policy or custom"

failed to instruct, supervise, control and discipline the defendants to refrain from certain alleged

behaviors, that he knew or should have known that the "wrongs conspired to be done, as

heretofore alleged, were about to be committed," that he could and should have prevented the

alleged wrongs and that he approved or ratified the alleged conduct. (Am. Compl., Fourth Count.

¶¶ 35, 36, 37).

     Even if the plaintiff could prove the occurrence of constitutional wrongdoing here (which

we submit he cannot), the liability of a supervisor does not attach on a theory of *respondeat*

*superior*.  Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 98 S.

Ct. 2019 (1978).  Liability of a supervisor may only attach pursuant to Section 1983, if:  (1) the

supervisory official, after learning of the violation, failed to remedy the wrong; (2) the

supervisory official created a policy or custom under which the constitutional practice has

occurred or allowed such a policy or custom to continue; or (3) the supervisory official was

grossly negligent in managing the subordinates who caused the unlawful condition or event.

Spencer v. Doe, 139 F.3d 107, 112 (2d Cir. 1998).

     The plaintiff can produce no evidence to support his claim that Chief Marquis knew of

the alleged conduct, that there existed a policy or custom under which unconstitutional practices

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

occurred, or that he was grossly negligent in managing his officers. [9]  To the contrary, the

plaintiff merely advances the conclusory allegations that because the defendant detectives

allegedly violated his Constitutional rights, Chief Marquis must also be liable for failing to train,

supervise and discipline them.

Despite his bald assertions to the contrary, there is simply no factual basis to support any

claim of direct participation by Chief Marquis in or knowledge of the alleged wrongdoing of the

defendant detectives.  See Zavatsky v. Anderson, 130 F. Supp. 2d 349, 358 (D. Conn.

2001)("personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under Section 1983.").

Similarly, and quite significantly, despite claiming the existence and furtherance of an

alleged "policy or custom," the plaintiff has provided no evidence in this regard.  To the

contrary, he has specifically averred that he is not relying upon any other incidents of alleged

police misconduct in support of his claims.  (**Exh. F**, Pl. Response to Def. Interrogatory No. 12).

"In view of the extensive discovery that necessarily results from a claim of municipal liability

under *Monell*, there should be evidence of a municipality's policy beyond a mere single, isolated

---

[9]    Notwithstanding the Second Circuit decisions to the contrary, in view of the United
States Supreme Court ruling in the City of Canton v. Harris, it is doubtful that the grossly
negligent standard is a viable basis to impute liability to a supervisory official.  In City of
Canton, the United States Supreme Court specifically rejected gross negligence as a basis for
imposing liability on a municipality for its alleged failure to train its employees.  489 U.S. 378,
388, 109 S.Ct. 1197, 1204 (1989).  Instead, the Court adopted the deliberate indifference
standard; Id.; see also Moffitt v. Brookfield, 950 F.2d 880, 886 fn. 5 (2d Cir. 1991)(negligence is
not enough to impute liability).  While the Supreme Court has not yet had the opportunity to
answer the appropriate constitutional standard for a supervisory defendant, there is no reason to
believe that the Supreme Court would not apply this municipal liability standard to claims of
supervisory liability similar to those at issue herein.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**HALLORAN**
**& SAGE** LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

incident." <u>Stengel v. City of Hartford</u>, 652 F. Supp. 572, 574 (D. Conn. 1987) (internal citations omitted). "A plaintiff must typically point to facts outside his own case to support his allegation of a policy on the part of the municipality." <u>Thurman v. City of Torrington</u>, 595 F. Supp. 1521, 1530 (D. Conn. 1984). In the absence of such evidence, the plaintiff's claim of policy or custom cannot withstand scrutiny.

Finally, to the extent the plaintiff has even properly pled "gross negligence," he has not provided any factual support therefor.

Even if there were evidence as to the above criteria, Chief Marquis also asserts the defense of qualified immunity. The same criteria as discussed in detail above apply to the plaintiff's claims against Chief Marquis and will not be reiterated here. The bottom line is that without specific evidence that would support a claim of constitutional liability against Chief Marquis, he is effectively stripped of his immunity defense if he is required to go to trial to defend against these unsupported allegations.

> The promise of early exit from a lawsuit offered by qualified immunity is an empty promise if plaintiffs are routinely permitted to survive a motion to dismiss with mere 'notice' pleading.

<u>Veney v. Hogan</u>, 70 F.3d 1917, 922 (6th Cir. 1995). To defeat the qualified immunity defense, the plaintiff must offer specific, non-conclusory facts that would enable the Court to determine if the facts would overcome the defense of qualified immunity. <u>Id</u>., <u>see also</u> <u>Conrad v. Davis</u>, 120 F.3d 92, 95 (8th Cir. 1997)(plaintiff must aver particularized allegations of unconstitutional conduct once the defense of qualified immunity is raised). As indicated above, and despite have enjoyed the privilege of discovery, the plaintiff has not done so, nor will he be able to. His

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

failure to identify what guideline, regulation, policy, practice, or procedure should have been

promulgated, or what level or type of training or supervision was required, and how the failure or

refusal to do so demonstrates the lack of objective reasonableness by Chief Marquis necessitates

that his motion be granted.

     As such, Chief Marquis is entitled to judgment as a matter of law.

**CONCLUSION**

     For the foregoing reasons, the Court should grant the defendants' motion for summary

judgment in its entirety and enter judgment in their favor.

              Respectfully submitted,

              THE DEFENDANTS:
              HENDERSON, MARTINEZ, JOHNSON,
              MARQUIS AND CITY OF HARTFORD


BY: _____
              James J. Szerejko
              Fed. Bar No. ct04326
              **HALLORAN & SAGE LLP**
              One Goodwin Square
              225 Asylum Street
              Hartford, CT  06103
              Tel. No.: (860) 522-6103
              Fax No.: (860) 548-0006
              E-mail:    szerejko@halloran-sage.com

- 40 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## <u>CERTIFICATION</u>

This is to certify that on this 15th day of July, 2004, the foregoing was caused to be mailed, postpaid, to:

Deron Freeman, Esq.
Donald E. Freeman, Esq.
Law Offices of Donald E. Freeman
21 Oak Street, Suite 203
Hartford, CT 06106
Phone:  860-728-0359

_____
James J. Szerejko

570682_1.DOC

- 41 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105