UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSLYN ROBINSON                                   :    CIVIL ACTION
                                                  :    NO. 3:02CV2120 (AWT)
V.
OFFICER HENDERSON,
OFFICER MARTINEZ,
OFFICER JOHNSON,
BRUCE MARQUIS,
THE CITY OF HARTFORD                              :    AUGUST 31, 2004

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Rule 9(c), the plaintiff, Joslyn Robinson, hereby opposes defendants' Motion for Summary Judgment as set forth in the attached memorandum.

**WHEREFORE,** the plaintiff respectfully requests that defendants' Motion for Summary Judgment be denied.

PLAINTIFF, JOSLYN ROBINSON

By_____
Deron Freeman
ct 22781
Freeman Law Firm
21 Oak St., Suite 203
Hartford, CT 06106

## CERTIFICATION

This is to certify that the foregoing was mailed on this __1__ day of September, 2004 to the following:

James Szerejko, Esq
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT 06103


Deron Freeman

2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSLYN ROBINSON

V.                                    :      CIVIL ACTION
                                      :      NO. 3:02CV2120 (AWT)
OFFICER HENDERSON,
OFFICER MARTINEZ,
OFFICER JOHNSON,
BRUCE MARQUIS,
THE CITY OF HARTFORD

                                      :      AUGUST 31, 2004

## OBJECTION TO DEFENDANTS' MOTION TO SUMMARY JUDGMENT

### I.    PRELIMINARY STATEMENT

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Rule 9(c), the plaintiff, Joslyn Robinson, hereby opposes defendants' Motion for Summary Judgment as set forth in this memorandum and appendix of exhibits.

### II.   LEGAL STANDARD

For defendants to prevail in their Motion for Summary Judgment, they must meet the initial burden of establishing those portions of the record that demonstrate the absence of any genuine issue of material fact. T.W. Elec. Service v. Pacific Elec. Contractors, 809 f. 2d 626, 627 (9th Cir. 1987). If this initial burden is met, summary judgment will still be denied if plaintiff can "set forth specific facts showing there is a genuine issue for trial." Anderson v Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have (the) effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect the application of appropriate principles of law to the rights and obligations of the parties." Kendall v Hoover Co, 751 F.2d 171, 174 (6th Cir.1984). In evaluating a motion for summary

3

judgment, the Court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. <u>See</u>, <u>U.S. v Diebold</u>, 369 U.S. 654, 655, 82 S.Ct. 993, 8 (1962).

## III.    STATEMENT OF FACTS

This is a civil action seeking damages against defendants for committing acts, under color of law, which deprived plaintiff of rights secured under the Constitution and laws of the United States; for conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny plaintiff equal protection of laws; and for refusing or neglecting to prevent such deprivations and denials to plaintiff.  The Court has jurisdiction of this action under 42. U.S.C. §1983 and 28 U.S.C. § 1343.

On July 27, 2001, at approximately 7:45 p.m., plaintiff was in his automobile with his girlfriend, Sherrille Williams which was located in the vicinity of plaintiff's aunt's residence located on Burton Street in the City of Hartford.  At said time and place, a van containing several individuals proceeded to box in plaintiff's car so plaintiff could not move. (Exhibit A, Robinson Deposition p.19).   The occupants of this vehicle yelled for plaintiff to exit his vehicle. (Exhibit A, Robinson Deposition p. 20-21).

Plaintiff was frightened by said occurrence since the occupants of the vehicles which boxed in plaintiff's vehicle, later identified as Officer Henderson, Officer Martinez and Officer Johnson did not identify themselves as police officers.  (Exhibit A, Robinson Deposition p. 31).

Upon plaintiff exiting his vehicle, Officer Henderson, Officer Martinez, and Officer Johnson began to try to grab and pull him out. (Exhibit A, Robinson Deposition p. 20). Defendants, Officer Henderson, Officer Martinez and Officer Johnson then began to search plaintiff's person.  At said time and place, defendants Officer Henderson, Officer Martinez, and Officer Johnson began to shout profanities toward plaintiff and to ridicule plaintiff in an antagonistic fashion. (Exhibit A, Robinson Deposition p.30).

Defendants Officer Henderson, Officer Martinez, and Officer Johnson, tackled plaintiff to the ground, dragged the plaintiff on the asphalt, picked plaintiff up, punched

plaintiff in his face, and then threw plaintiff to the ground a second time putting a knee in plaintiff's back and head.  (Exhibit A, Robinson Deposition p. 22).   Defendants Officer Henderson, Officer Martinez and Officer Johnson, in an effort to provoke plaintiff, then began to berate and ridicule plaintiff's mother Barbara Caines, who was drawn to the scene as her residence is only blocks away.

Defendants Officer Henderson, Officer Martinez, and/or Officer Johnson, pat down plaintiff and put plaintiff and his passenger Sherrille Williams into a van. They then transported both plaintiff and plaintiff's passenger Sherrille Williams to Keeney Park via Woodland Street.   (Exhibit A, Robinson Deposition p. 30).

At said time and place, defendants drove to a semi-secluded area of the park and asked both plaintiff and Sherrille Williams to exit the vehicle after a female officer arrived.  Officer Martinez, Officer Henderson and Officer Johnson then asked plaintiff to take off his shoes and socks to search and pulled plaintiff's pants down to his knees. (Exhibit A, Robinson Deposition p. 31).

Officer Martinez, Officer Henderson and/or Officer Johnson then reached into the pants of plaintiff and began to search plaintiff's genital and buttock area with his hand. (Exhibit A, Robinson Deposition p. 33).

Throughout this entire search, Officer Henderson, Officer Martinez and Officer Johnson were verbally taunting plaintiff with profanities including calling plaintiff a "faggot". (Exhibit A, Robinson Deposition p. 33).  Plaintiff was then transported to Jennings Road Lock-up.

As a result of said assault, plaintiff suffered chest wall contusions, facial contusions, contusions and lacerations to his back, and pain to his ribs, and back. (Exhibit A, Robinson Deposition p. 46).

There was no warrant for the arrest of plaintiff on July 27, 2001.  The arrest of plaintiff by defendants Officer Henderson, Officer Martinez and Officer Johnson, as stated above, was without reasonable grounds for said defendants to believe plaintiff had committed an offense.  Plaintiff was never informed of his rights.

Plaintiff was received in lock-up at approximately 7:00 p.m. on July 27, 2001, was charged with Breach of Peace and Interfering with a Police Officer, posted bond and was not released until approximately 10:00 p.m. after paying $500.00 on a $5,000.00 bond. (Exhibit A, Robinson Deposition p. 38). Upon plaintiff's release from jail he was forced to seek emergency medical treatment at St. Francis Hospital in Hartford, Connecticut as a result of the above injuries.

Defendants swore out a complaint against plaintiff and charged him with Breach of Peace and Interfering with a Police Officer. Said complaint alleged the stated offenses occurred at Burton Street on the street, in the City of Hartford and makes no mention of the trip to Keney Park. (Exhibit B, Police Report).

Neither at the time of the arrest, nor at any other time was plaintiff informed of the grounds for said arrest. No complaint, information, or indictment was ever sworn against plaintiff alleging offenses occurring prior to the moment defendants Officer Henderson, Officer Martinez and Officer Johnson announced to plaintiff that he was under arrest. Said charges against plaintiff were ultimately nolled for want of prosecution on July 31, 2001 before the Honorable Raymond Norko, J. and dismissal was the final determination of charges.

## IV.    ARGUMENT

### A. Summary judgment should be denied because there are genuine issues of material fact and plaintiff's constitutional claims, when viewed in the light most favorable to the non-moving party, are sufficient as pled.

Since there are significant factual disputes between the plaintiff and defendants' account of the incident, summary judgment is inappropriate. For defendants to prevail in their Motion for Summary Judgment, they must meet the initial burden of establishing those portions of the record that demonstrate the absence of any genuine issue of material fact. T.W. Elec. Service v. Pacific Elec. Contractors, 809 F. 2d 626, 627 (9th Cir. 1987). Defendants claim detectives and troopers…approached the plaintiff with their badges visible and identified themselves as police officers (Defendants' Exhibits A, B, C and D). The issue of whether or not defendants identified themselves and at what point

is crucial in determining whether or not plaintiff has a complete defense to an interfering/ resisting charge. This is so because it is plaintiff and his passenger's contention that "nobody said they were police officers, nobody read me my rights, nobody showed me any badges"..."No. there wasn't any type of identification" (Exhibit A, Robinson Deposition, p 23.) (Exhibit C, Williams Deposition p.13). In addition, although this fact is omitted from defendant's record, plaintiff contends that officers attempted to physically pull him from the vehicle. (Exhibit A, Robinson Deposition p.21).

As well, although defendants contend it was customary practice to remove plaintiff from the location on Burton Street to Keney Park (a fact omitted from the police report, Exhibit B), Officer Henderson's response to that inquiry was "it all depends on the situation". In addition to the foregoing factual disputes, defendants contend they did not strip search plaintiff in an open area in Keney Park, (Exhibit D-1, Henderson Deposition p. 57) where plaintiff states Hartford police officers did in fact strip search him (Exhibit A, Robinson Deposition p. 33).

Since these factual disputes are central to the issues, inter alia, of excessive force, due process, intentional infliction of emotional distress, equal protection, and qualified immunity summary judgment is inappropriate.

B. **Summary Judgment is inappropriate because plaintiff's claim is sufficient to support an action for false arrest .**

Since defendants lacked sufficient justification to initiate a stop and further instigated plaintiff's actions, they lacked probable cause to arrest the plaintiff. Defendants' Motion for Summary Judgment should be denied since defendants initial stop was without sufficient justification, the defendants' subsequent actions were precipitated by illegal police conduct, and they lacked probable cause to make an arrest based on a totality of the circumstances. To establish a claim for false arrest under 42 U.S.C. § 1983, plaintiff must show that "the defendant intentionally confined him without his consent and without justification." Weyant v Okst, 101 F.3d 845, 852 (2d Cir. 1996). Although the defendant claims there can be no claim for false arrest

7

where the arresting officer had probable cause to arrest the plaintiff, it is plaintiff's position that defendant's did not have probable cause to arrest plaintiff.

Because justification can nullify probable cause to arrest, (under some circumstances, a police officer's awareness of the facts supporting a defense to the suspected crime can eliminate probable cause to arrest the person suspected of committing the crime), Jocks v. Tavernier, 316 F.3d 128, 2003), and police officers were aware they had not identified themselves (according to defendant and his passenger's deposition police failed to identify themselves), defendants lacked probable cause to arrest the plaintiff for resisting and unlawful intrusion.    Probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id.

In the false arrest context, a defendant officer is entitled to summary judgment on a §1983 claim when no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe he was acting in a fashion that did not clearly violate an established federally protected right. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

In the case at bar, Officers Henderson, Johnson, and Martinez were on narcotic patrol in an area they believed to be known for high trafficking of narcotics. (Exhibit B, police report).  At that time, Officer Johnson claims to have seen a gun in the waistband of Mr. Robinson's pants.  (Exhibit B, police report).  At this point, the officers neither have probable cause or reasonable suspicion to detain the defendant even if the officer is taken at his word, because carrying a weapon is not illegal with a proper permit, a fact no officer reports to have any information about.  (Exhibit B, police report).  The actions of the police officers subsequent to this point are therefore illegal.  Actions by the plaintiff in response to officers' illegal intrusion are not supported by probable cause since said actions are precipitated by this initial fourth amendment violation. Jocks v.

8

<u>Tavernier</u>, 316 F.3d 128, 2003.  Although, Officer Johnson swears in his affidavit he believed he saw a gun in Mr. Robinson's waistband (Exhibit B, police report), the defendant is without a shirt, no gun is ever recovered, the task force is admittedly searching for narcotics offenders, and police have no information as to whether Mr. Robinson (if he indeed had a gun) was licensed to carry a weapon.

It is defendants' contention that since plaintiff slapped Officer Henderson's hands away, would not remain still, argued with detectives, consistently used profanities, and encouraged others to become involved, plaintiff's actions amounted to the requisite obstruction, resistance, hindrance and/or endangerment called for in Conn. Gen. Statutes Sec.53a-167. (def. Mot. Summ. Judg. p.10)  However, this analyses is flawed. Intent is an element of the crime of Interfering with an Officer. <u>State v. Jenkins (1996)</u> 672 A.2d 969, 40 Conn.App. 601, certification denied 676 A.2d 1374, 237 Conn. 918. Although defendants contend it is immaterial whether, and/or at what point, officers identified themselves, this issue is of crucial significance.   If in fact the officers knew full well they had not yet identified themselves as police officers, despite their sworn affidavits to the contrary, (Defs. Exhibits A, B, C and D) as plaintiff contends, probable cause does not and cannot exist to arrest Mr. Robinson for attempting to thwart what could be an attempted robbery by plain clothes individuals.  When viewed in the light most favorable to the plaintiff, a jury could well find that the officers' conduct was objectively unreasonable.

In addition, although defendants claim probable cause existed to arrest the plaintiff when he argued with defendants and would not remain still to be searched even after knowing defendants were police officers, this is not the case.  Probable cause to arrest considers the totality of the circumstances and is thwarted in this instance since justification is a defense to  any prosecution for an offense, as defined in sections 53a-17 to 53a-23, C.G.S. 53a-16.

When Hartford police officers who were admittedly searching for narcotics:

a) accused a shirtless plaintiff of walking the streets with a weapon exposed, (Exhibit A, Robinson Deposition p. 33);

b) brutalized plaintiff after failing to uncover any illegality (Exhibit A, Robinson Deposition p.28); and

c) charged Mr. Robinson with the only crime remotely suitable after his natural emotional reaction to being violated, they violated his Fourth Amendment rights.

Defendants' Motion for Summary Judgment should be denied since there are genuine issues of material fact and the arresting officers knew that their unlawful behavior precipitated Mr. Robinson's actions prior to his arrest.

**C.** **Since defendant's lacked reasonable suspicion for the search, seizure, and/or detention of Mr. Robinson they violated his Fourth Amendment Rights.**

Since the facts and circumstances surrounding this incident are such that a reasonable jury could disbelieve defendant officers ever saw a gun or ever thought they saw a gun, summary judgment on this issue would be inappropriate.  Mr. Robinson was without a shirt, the officers were 30 feet away, (Exhibit D-2, Henderson, Deposition p. 19), no gun was ever recovered, and officers approached who they believed to be an armed narcotics dealer without drawing their weapons (Exhibit D-3, Henderson Deposition p. 22).  To determine whether reasonable suspicion existed at the time of a stop, "the circumstances surrounding the stop must be viewed as a whole...through the eyes of a reasonable and cautious police officer on the scene guided by his experience and training." Delos-rios, 642 F.2d at 45 (citations omitted).  There is no evidence in any affidavit that through officers training and experience criminal offenders walk around with exposed guns in their waistband.

Summary judgment is inappropriate with regard to the illegal search and seizure of Joslyn Robinson since the totality of the circumstances call into question the credibility of the officers' assertions they saw a gun.  Since this assertion very well could have been a mach justification for the intrusion upon the plaintiff, especially when plaintiff is not asked about any gun until after he is arrested factual issues remain. (Exhibit A, Robinson deposition p. 7).

**D.**    <u>Police officer's used excessive force when they grabbed Mr. Robinson, picked him up, slammed him on the ground, and dragged him by his legs on the asphalt.</u>

Although the defendants claim that since Officer Henderson, Martinez, and Johnson were looking for a gun (Def. Mot. For Summ. Judg. p. 15), the force exerted upon plaintiff, even in the light most favorable to him, was not excessive, said assertion requires a reliance upon officer's statement.

In analyzing the reasonableness of Officers Henderson's conduct, it is important to examine the undisputed facts. Relying on the statements of police officers in determining the objective reasonableness of use of force, as defendants would have us do, is a practice in futility. Clearly savvy and experienced police officers are educated enough to understand what must be said, and/or written, to circumvent constitutional scrutiny. Therefore beginning analyses of reasonable conduct from the word of a police officer "he believed he saw a gun" clearly places the plaintiff at a disadvantage. While our Supreme Court has had few occasions to discuss this issue in depth, in the case of *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir.1990), the Second Circuit Court of Appeals stated as follows with respect to claims under the United States Constitution:

> To establish a Fourth Amendment excessive-force claim, a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standards ... The reasonableness of the force used is 'judged from the perspective of a reasonable officer on the scene' and takes into account factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir.1990).

11

In the instant case, officers can say they saw a myriad of illegal items upon the person or target, especially when on undercover patrol for narcotics, to justify an intrusion. The undisputed facts are that the plaintiff in the case at bar was coming from the corner store, with a can of soda in his hand and no shirt on. Mr. Robinson walked down the street in plain view with a soda in his hand, delivers said soda to his mom and walked all the way back up the street to where his car was parked (Exhibit A, Robinson, Deposition p. 13). Undercover agents therefore theoretically had plenty of time to ascertain what, if anything, Mr. Robinson was carrying. At this point officers, who apparently believed to see him with a gun, (without knowing whether this is a legal gun or not) approach the plaintiff and immediately spew profanities at him, without identifying themselves, an assertion corroborated by plaintiff's companion, Sherrille Williams. (Exhibit A, Robinson, Deposition p. 20) (Exhibit C, Williams Deposition p.13). Hartford police officers, still without identifying themselves attempt to forcefully extricate plaintiff from his own vehicle while continuing to verbally berate him. (Exhibit A, Robinson, Deposition p. 13) (Exhibit C, Williams Deposition p.13). Finally, Officer Henderson, after escalating the entire situation, grabbed plaintiff, picked him up, slammed him on the ground, dragged him by his legs away from the car, turned him over and then came down upon plaintiff's back with his knees. (Exhibit A, Robinson Deposition p.13).

When viewed in the light most favorable to the plaintiff, police officers escalated a situation where no crime had been committed, by verbally and physically abusing Mr. Robinson without justification. If police officers in fact never saw a gun, a notion that based on the totality of the circumstances is at least a possibility a jury could consider, then their conduct most certainly falls outside the realm of reasonable force, even from the perspective of a reasonable officer. If in fact Hartford police officers knew they had not seen a gun, suspected the plaintiff was involved in illegal drug activities, sought to investigate their suspicion and justify such an intrusion by purporting to see a gun, it can reasonably be argued that the force at issue infringed on the plaintiff's rights or that any reasonable police officer would understand that the force used was unconstitutionally

excessive. <u>Graham, 490 U.S. at 396.</u> The courts will not allow police officers to escalate a benign situation into a chargeable offense by provoking a suspect into action. To allow such an intrusion upon ones constitutional rights, and to then allow an officer to escape culpability by claiming a suspect was uncooperative with said intrusion, would not serve the interests of Justice or the Constitution.

**E.      <u>Defendant's are not entitled to Summary Judgment on Qualified immunity grounds with respect to plaintiff's fourth amendment excessive force claim because there conduct, taken in the light most favorable to the plaintiff, was not objectively reasonable.</u>**

Since the facts, viewed in the light most favorable to the plaintiff, are objectively unreasonably excessive, summary judgment is inappropriate.   As stated above, it is plaintiff's claim he was not free to leave, and thus for Fourth Amendment purposes seized when officers boxed in his car.   As officers then proceeded to verbally and physically attack the plaintiff, without identification, attempt to pull him out of his automobile, and proceed to pick him up, slam him to the ground, drag him by his legs turn him over and land on plaintiff with full force and both knees, plaintiff still had committed no crime.  (Exhibit A, Robinson Deposition p. 23) The court in <u>Kerman v. City of New York,</u> 261 F.3d 229 C.A.2 (N.Y.), 2001, states:

> Judge McKenna originally found and we now reaffirm, the contrasting accounts of *both* Kerman's and Crossan's conduct following the initial seizure and handcuffing present factual issues as to the degree of force actually employed and its reasonableness. If the jury were to credit Kerman's version of the facts and believe his allegations of handcuff tightening, infliction of pain, verbal abuse, humiliation and unnecessary confinement to a restraint bag in a painful position, our prior cases indicate that the use of force under Crossan's supervision might well be objectively unreasonable and therefore excessive. See, <u>Breen v. Garrison, 169 F.3d 152, 153 (2d Cir.1999)</u> (per curiam); <u>Calamia v. City of N.Y., 879 F.2d 1025, 1035 (2d Cir.1989)</u>; <u>Robison v. Via, 821 F.2d 913, 923-24 (2d Cir.1987)</u>. However, the parties' versions of the facts differ markedly and "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." <u>Thomas v. Roach, 165 F.3d at 143</u>.

13

> Therefore, we remand to the district court the issues of whether Crossan
> employed excessive force following the initial seizure and handcuffing of
> Kerman and whether qualified immunity attaches"

Since the facts, viewed in the light most favorable to the plaintiff, support a claim of excessive force under the objectively reasonable standard, and there are material facts disputes, defendants' Motion for Summary Judgment on qualified immunity basis should be denied.

**F.      Officers are not entitled to qualified immunity on plaintiff's false arrest claim because they cannot precipitate a hostile response with unlawful conduct, and then seek to charge an individual for that response.**

Summary judgment should be denied with respect to defendants' claim they are protected by qualified immunity regarding plaintiff's false arrest claim.   A police officer is entitled to qualified immunity from suit without probable cause if either (1) it is objectively reasonable for the officer to believe that probable cause existed, or (2) officer of reasonable competence could disagree on whether the probable cause test was met. Escalera v. Lunn, 361 F. 3d 737, 743 (2d Cir. 2004).  However, viewed in the light most favorable to the plaintiff, police officers, who allegedly thought they saw a gun on a shirtless suspect, proceed to search the suspect, his automobile, as well as his passenger, without identifying themselves. (Exhibit A, Robinson Deposition p. 30). During this search police officers were verbally and physically abusive, and then without discovering any criminal activity, proceeded to transport the suspect to an undisclosed location and strip search him. (Exhibit A, Robinson Deposition p. 32).  After failing to find a gun, police officers then charge the suspect with conduct that would be the natural reaction of such an unlawful intrusion, in an effort to mitigate their error.  The conduct of the officers, when viewed in the light most favorable to the plaintiff, cannot be said to be objectively reasonable, or arguable to officers of reasonable competence on the issue of probable cause.

## V.    CONCLUSION

Based on the foregoing facts and law, Defendants' Motion for Summary Judgment should be denied.

PLAINTIFF, JOSLYN ROBINSON

By
Deron Freeman
ct 22781
Freeman Law Firm
21 Oak St., Suite 203
Hartford, CT 06106

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, via U.S. mail, postage prepaid this 1st day of September 2004 to the following:

James Szerejko, Esq
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Deron Freeman

16